# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | No. 10-220 |
| KESHAWN PACE | : | |

## MEMORANDUM

Schiller, J.                                                                                                                         February 8, 2010

On November 17, 2008, Keshawn Pace was detained for identification purposes. Police searched the Cadillac he was driving, uncovering a collection of identification documents. On April 13, 2010, a grand jury returned an eighteen-count indictment against Pace, charging him with one count of conspiring to traffic in counterfeit access devices, one count of access device fraud, and sixteen counts of aggravated identity theft. Pace contends that his detention and the search of the Cadillac violated the Fourth Amendment. He has therefore moved to suppress the evidence uncovered in the car.[1] On February 2, 2011, the Court held a suppression hearing. For the reasons that follow, the Court will deny the motion.

## I.    BACKGROUND

On November 17, 2008, Bensalem Township police officer Brian Cowden noticed a tan Cadillac sedan parked outside a motel at 2277 Lincoln Highway. The officer checked the car's registration and learned that it was connected to a rape and robbery incident in Philadelphia. The

---

[1] Pace also moved to suppress any statements he made after being placed into the police car because they were made in the absence of *Miranda* warnings. However, the Government now indicates that it will not introduce any such statements in its case-in-chief. This portion of Pace's motion is thus moot.

alleged perpetrator, known to drive the Cadillac, was described in a National Crime Information Center (NCIC) report as a twenty-eight year old black male who was six feet tall and weighed about 190 pounds. Cowden checked with the motel clerk, who informed him that the occupants of the Cadillac would be checking out shortly. After waiting twenty minutes, Cowden saw a woman leave the motel and enter the front passenger seat of the car. Shortly thereafter, a black male, later identified as Pace, got into the driver's seat and started the car. As Pace was about to back the car out of the motel parking lot, Cowden activated his lights and siren and blocked the car's path.

As Cowden was exiting his patrol car, Pace exited the Cadillac and approached him. When Cowden asked for identification, Pace informed Cowden that he did not have any and that his license was suspended. Pace told Cowden that the car was mistakenly associated with a fugitive who had raped and robbed his small cousins, and that as a result, the car was in the NCIC report. Pace informed Cowden that he had borrowed the car from its owner. Pace also told the officer that he had previously been detained because of the car's association with the rape-robbery incident. During the conversation, Cowden observed that the as-yet-unidentified driver generally matched that of the wanted fugitive. Pace's companion was immediately arrested because of an outstanding warrant.

After the conversation, Cowden detained Pace for identification purposes. He was handcuffed and transported to the Bensalem Township Police Headquarters to be fingerprinted. Because both occupants of the car were being detained and Pace did not have a valid driver's license, Cowden decided to impound the car. In the course of an inventory search, Cowden discovered a variety of identification documents in the back seat, including: two drivers' licenses in the name of R.S.; one driver's license and one Penn State ID card in the name of V.D.; two bank credit cards in the name of R.L.A.; and drivers' licenses in the names of D.G., W.M., and J.M.

Cowden also discovered a credit report for V.D. along with handwritten notes identifying a number of other persons by name, address, and social security number. The driver of the Cadillac was ultimitely identified as Pace, rather than the fugitive wanted in the robbery-rape. He was questioned by the Bensalem police about possible identify theft and released.

## II. STANDARD OF REVIEW

The movant bears the burden of proving, by a preponderance of the evidence, that the evidence in question should be suppressed. *United States v. Johnson,* 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. Acosta,* 965 F.2d 1248, 1256 n.9 (3d Cir. 1992)). Once the defendant establishes that the police conducted a warrantless search, however, the burden shifts to the government to show that the search was reasonable. *Id*.

## III. DISCUSSION

### A. The Stop and Arrest of Pace

The Fourth Amendment protects the right of the people "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." Stopping and detaining a vehicle and its occupants is a seizure under the Fourth Amendment. *Johnson,* 63 F.3d at 245. To be reasonable under the Fourth Amendment, a vehicle stop must be based on reasonable suspicion: "an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006). In assessing whether there was reasonable suspicion for a stop, "courts are not to evaluate factors in

isolation, but are instead to evaluate the totality of the circumstances, and to afford the officers the opportunity to 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them.'" *United States v. Nelson*, 284 F.3d 472, 481 (3d Cir. 2002) (quoting *United States v. Arvizu*, 534 U.S. 266, 275 (2002)). In this case, Officer Cowden had reasonable suspicion to stop the Cadillac. After checking the vehicle's tags, he discovered that the car was associated with a crime for which the perpetrator was still at large. The stop was necessary in order to confirm or dispel the officer's suspicion that Pace was the fugitive. *See United States v. Sharpe*, 470 U.S. 675, 693 (1985).

Next, Pace challenges his detention and subsequent trip to the Bensalem police station. Probable cause to arrest "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). The evidence establishes that Cowden's reasonable suspicion ripened into probable cause for an arrest after Cowden's conversation with Pace. The as-yet unidentified Pace told Cowden that the suspect associated with the car was wanted in a rape-robbery, adding the additional detail that the victims were the fugitive's small cousins. This apparent familiarity with the details of the crime, combined with the fact that Pace lacked identification, was enough to support a reasonable officer's belief that Pace was in fact the wanted suspect. Therefore, the arrest was lawful.

Pace argues that upon Cowden's inquiries, he truthfully told the officer that he was not the wanted fugitive, and that "much of what Pace told the officers could have been verified at the scene." (Def.'s Reply to Govt.'s Mot. to Suppress 4.) Specifically, Pace points out that the police could have obtained Pace's photograph on their vehicle computers and contacted his mother to determine that

4

he was not the wanted person. However, Cowden testified that Bensalem police vehicles were not equipped to transmit photographs. Transportation to the police station to ascertain Pace's identity was reasonable in these circumstances. *See United States* v. *Amankwaa,* Crim. A. No. 09-153-01, 2010 WL 55710, at *5 (M.D. Pa. Jan. 4, 2010).

    **B.    The Search of the Cadillac**

        *1.    Probable cause*

Police need not obtain a warrant to search a vehicle if probable cause exists that it contains evidence of criminal activity. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Pace invokes *Arizona v. Gant*, 129 S.Ct. 1710 (2009), to challenge the search of the Cadillac, arguing that *Gant* did away with the automobile exception to the warrant requirement. However, *Gant* involved an automobile search incident to an arrest, and is thus inapposite. Here, the officers had probable cause to search the vehicle itself. The NCIC report indicated that the Cadillac was associated with a wanted fugitive, providing probable cause to believe that the car contained either evidence related to the alleged rape-robbery or evidence of the fugitive's whereabouts in the event that Pace turned out not to be the wanted man. Accordingly, the search of the Cadillac was lawful.[2]

---

[2] The Court is skeptical that Pace had a reasonable expectation of privacy in the borrowed Cadillac, as Pace testified that he had only borrowed the car for a short period. *See United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) (discussing the Fourth Amendment's standing requirement). In *United States v. Baker*, the Third Circuit held that "whether the driver of a car has the reasonable expectation of privacy necessary to show Fourth Amendment standing is a fact-bound question dependent on the strength of his interest in the car and the nature of his control over it; ownership is not necessary." 221 F.3d 438, 442 (3d Cir. 2000); *see United States v. Schofield*, 90 F. App'x 798, 802 (3d Cir. 2003). In *Schofield*, however the Third Circuit questioned whether a short-term borrower of a car could establish standing, in contrast to the situation in *Baker*, where the Court held that the borrower of the car who had driven it for four to six weeks had standing to object to the search. *Schofield*, 90 F. App'x at 802. However, even if the Court were to determine that Pace had standing, the evidence found therein should not be suppressed because the stop, detention, and search were lawful.

### 2. *Inventory search*

Additionally, the evidence was discovered during the course of a lawful inventory search. Pace asserts that the impoundment of the Cadillac was unlawful because the Bensalem police did not follow departmental procedures in effectuating the impoundment. The Government counters that the car was legitimately impounded pursuant to the community caretaking exception to the warrant requirement, which "encompasses law enforcement's authority to remove vehicles that impede traffic or threaten public safety and convenience." *United States v. Smith*, 522 F. 3d 305, 314 (3d Cir. 2008). The Third Circuit has held that as long as the impoundment decision is reasonable, it need not be made pursuant to a standardized departmental procedure. *Id.* Here, the impoundment was reasonable. The police had already arrested both occupants of the vehicle, and it was parked in a commercial space where it could not remain indefinitely. Additionally, Cowden testified that the car could have been damaged or stolen while left unattended in a "high crime area," potentially subjecting the Bensalem Police Department to liability for the loss of the car and its contents.

Inventory searches of lawfully seized automobiles are an exception to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983). Inventory searches serve three "strong governmental interests": "[1] to protect an owner's property while it is in the custody of the police, [2] to insure against claims of lost, stolen, or vandalized property, and [3] to guard the police from danger." *Bertine*, 479 U.S. at 372. Inventory searches must be "conducted according to standardized criteria" or established routine, consistent with the purpose of a non-investigative search. *Id.* at 374 n.6. Cowden's testimony established that the search was conducted pursuant to standard Bensalem Police Department procedures. Accordingly, the search was lawful.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Pace's motion to suppress the evidence discovered in the Cadillac. An appropriate Order will be docketed separately.